UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Western Petroleum Company,  Civ. No. 12-2999 (PAM/TNL)

    Plaintiff,

v.  **MEMORANDUM AND ORDER**

Strategic Bio Energy, LLC,

    Defendant.

---

This matter is before the Court on Plaintiff Western Petroleum Company's Motion for Summary Judgment on Defendant Strategic Bio Energy, LLC's counterclaims. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Western Petroleum Company is a Minnesota company that supplies fuel, including biodiesel, to distributors throughout the United States. Defendant Strategic Bio Energy is one such distributor, distributing ethanol and biodiesel mainly in the southeastern United States.

Western Petroleum and Strategic entered into either one or a series of oral agreements for the delivery of biodiesel by train from March through October 2012. The parties' relationship was memorialized only in "trade confirmations" generated by a third party, a broker called Progressive Fuels Limited ("PFL") that set up the dealings between Western Petroleum and Strategic. (Atmore Aff. Ex. C (Docket No. 28-1).) Western Petroleum

characterizes each trade confirmation as a separate contract covering a specific period of time during which Western Petroleum was to deliver biodiesel to Strategic. Strategic contends that there was a single agreement requiring the periodic delivery of biodiesel over eight months.[1]

Western Petroleum claims in its Complaint that Strategic breached the parties' March 2012 contract by refusing to take delivery of 122,500 gallons of biodiesel it had ordered, and breached the May 2012 contract by refusing to take delivery of 1,592,500 gallons of biodiesel. Strategic counterclaimed for breach of contract, contending that Western Petroleum failed to perform its obligations under the parties' agreement(s), and for unjust enrichment.

The parties' agreement(s) required that Western Petroleum ship the biodiesel in increments throughout the month the fuel was ordered, what the parties call shipping the fuel "rateably." (See Friesen Dep. (Docket No. 28-1) at 34 (explaining that "rateable" means shipments are spread throughout the month, so that for example "if there were 30 cars [ordered], you would ship one car a day in a month").) Because the price of the fuel fluctuated during the month but the invoice was generated at the beginning of the month, the parties agreed that they would "true-up" the invoices at the end of every month. (Oesterreich Dep. (Docket No. 28-1) at 53.) For example, if Strategic ordered 150,000 gallons of biodiesel for May, Western Petroleum's invoice would reflect the market price for that fuel

---

[1] However, Strategic's owner, Von Friesen, testified that each trade confirmation stood on its own as a separate agreement. (Friesen Dep. (Docket No. 28-1) at 58.)

as of May 1. If the price declined during the month, Western Petroleum would credit Strategic for the difference, but if the price increased, Strategic would pay the higher price. (Id.)

The difficulties between the two companies began in June 2012, when Western Petroleum's biodiesel supplier had mechanical problems and had to shut down its plant for longer than anticipated. (Edblom Dep. (Docket No. 28-1) at 21.) As a result, Western Petroleum was unable to deliver all of the biodiesel Strategic ordered for June, and had to shift the June deliveries to subsequent months. (Id. at 17.) Strategic claims that these supply issues caused one of its biggest customers, Pilot Travel Centers, to cancel its contract with Strategic, such that Strategic could not thereafter sell all of the biodiesel it had previously agreed to buy from Western Petroleum. (Friesen Dep. at 162-64.) Western Petroleum contends that the parties resolved the supply-delay issue by later agreeing to reduce by 25 rail cars the amount of biodiesel Strategic would purchase from Western Petroleum. (Atmore Aff. (Docket No. 28) Ex. G.) Western Petroleum also argues that Pilot cancelled its contract with Strategic because of price, not because of supply issues, and that Pilot decided to cancel the contract in April, two months before any supply issues arose. (Dobbins Aff. ¶ 9.)

In addition, the original agreement(s) provided that Strategic would buy the renewable identification numbers, or RINs, that came with the biodiesel. (Atmore Aff. Ex C.) RINs have value independent of the fuel itself and are often bought and sold separate from the fuel. According to Strategic, Western Petroleum began withholding the RINs from its deliveries in August 2012 and at the same time the market for RINs started declining, causing Strategic

to lose money because of the delay in providing the RINs. (Answer ¶ 3.) The parties thereafter agreed that Western Petroleum would purchase the RINs back from Strategic for a certain price that was above market value at the time of the agreement, but allegedly less than the market value of the RINs in August 2012. (Friesen Dep. at 135-36.) Western Petroleum contends that this agreement constituted an accord and satisfaction for all of Strategic's claims, or at least any claim Strategic had arising out of the alleged failure to supply RINs. Strategic disputes that the RINs purchase agreement satisfied any of its claims against Western Petroleum.

Finally, Strategic claims that Western Petroleum refused to true-up invoices in July and after, thus depriving Strategic of $400,000 worth of credit. (Friesen Dep. at 90.) Strategic also contends that Western Petroleum refused to credit Strategic for $600,000 in tax credits it received from the state of Georgia. (Id. at 97-99.)

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every

action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Western Petroleum's Motion**

Western Petroleum contends that Minnesota law should apply to the parties' dispute. Strategic does not take issue with that contention, but the parties cite both Minnesota and Georgia law to support their arguments. Because they seem to agree that there is no substantial difference between the two states' laws as applied to the facts of this case, the Court will rely on Minnesota law in its discussion below.

Many of Western Petroleum's contentions in this Motion depend on discounting or disbelieving the deposition testimony of Von Friesen, Strategic's owner. Western Petroleum contends that e-mail exchanges belie Friesen's testimony with respect to many of Strategic's claims. But e-mails are almost inherently ambiguous, and Friesen's testimony is his understanding of those e-mail exchanges. The fact that his understanding differs from Western Petroleum's understanding is not a reason to disregard Friesen's testimony and does not render that testimony inadmissibly contradictory. Rather, the differences between his and Western Petroleum's understanding is a factual dispute that is not appropriately resolved on

5

a motion for summary judgment.

### 1. Waiver of Breach

Western Petroleum's first argument is that, by continuing to take delivery under the contracts and continuing to pay the amounts due under the contract for June delivery, Strategic has waived any claim for breach of the contract. Strategic argues that the issue of waiver is one of fact that the Court cannot resolve on a motion for summary judgment.

While waiver is at times a factual issue, at other times the waiver is so clear and unambiguous that courts have resolved the issue as a matter of law. For example, the Minnesota Court of Appeals found that an employee who signed a document acknowledging a non-compete covenant and agreeing to be bound by it could not thereafter claim that his former employer had first breached the contract, thereby releasing him from the non-compete. Creative Commc'n Consultants, Inc. v. Gaylord, 403 N.W.2d 654, 657 (Minn. Ct. App. 1987). Similarly, a company that had agreed to purchase Vikings tickets pursuant to a statute that was subsequently repealed could not as a matter of law prevail on its claim that the repeal constituted a breach of its agreement to purchase when the company had, for years after the repeal, continued to operate under the agreement and had indicated in writing its belief that the statute's repeal did not affect its purchase obligations under the agreement. Metro. Sports Facilities Comm'n v. Gen'l Mills, Inc., 460 N.W.2d 625, 630 (Minn. Ct. App. 1990).

Here, however, the evidence is more equivocal than in the cases discussed above. Strategic continued to accept deliveries of biodiesel and continued to pay amounts due, but throughout August, September, and October, the e-mail exchanges indicate disputes as to how much biodiesel should be shipped, how much Western Petroleum was owed, and what credits Western Petroleum should be giving to Strategic. This is not an unequivocal waiver of Strategic's claim of breach, and a jury must determine whether Strategic in fact intended to waive Western Petroleum's alleged breaches. Western Petroleum's Motion on this point is denied.

### 2. Damages

Western Petroleum also contends that the evidence establishes that Pilot cancelled its contract with Strategic for reasons other than supply issues, so that Strategic cannot establish that it was damaged by those supply issues. Western Petroleum proffers the affidavit of Pilot's Director of Supply and Development, David Dobbins. Mr. Dobbins's avers that he did not discuss supply issues with Strategic, but that he decided to stop buying biodiesel from Strategic because of price. (Dobbins Aff. (Docket No. 29) ¶¶ 8-9.)

Friesen's testimony tells a very different story, however, and despite Western Petroleum's characterization of that testimony as "self-serving," the testimony creates a question of fact on the damages issue. Dobbins's affidavit is not as clear-cut as Western Petroleum makes it out to be, nor is the e-mail communication attached to that affidavit a clear repudiation of Friesen's side of the story. Mr. Dobbins states that "to [his] recollection" he did not discuss Strategic's supply issues with Friesen. (Id. ¶ 8.) But if Friesen recollects

7

the conversations differently, then there is a fact issue as to whether the supply issues caused Pilot to cancel some of its contracts with Strategic. And there are few e-mails between the two men after the supply issue was revealed sometime in mid-June, thus the e-mail exchanges also do not refute Friesen's side of the story. Western Petroleum's Motion on this point is denied.

### 3. Accord & Satisfaction

Next, Western Petroleum argues that the agreement for Western Petroleum to buy the late-delivered RINs back from Strategic constitutes an accord and satisfaction of any claim Strategic might have with respect to those RINs. In addition, Western Petroleum contends that the agreement to cancel the delivery of 25 rail cars was an accord and satisfaction of any claim arising out of the June delivery delay.

"Under Minnesota law, an accord and satisfaction may occur 'when a creditor accepts part payment of an unliquidated debt which the debtor tenders in full satisfaction of the debt . . . and the creditor accepts that offer.'" Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1391 (8th Cir. 1997) (quoting Don Kral, Inc. v. Lindstrom, 173 N.W.2d 921, 923 (1970)) (elipses in Astraea). Western Petroleum contends that e-mails between it and Strategic establish that Strategic considered the 25-car reduction a "fair" resolution of the delay issue and thus that reduction constituted an accord and satisfaction of any claim arising out of the shipping delays. Similarly, Western Petroleum contends that Strategic agreed to a purchase price for the RINs that constituted an accord and satisfaction of any claim arising out of the allegedly delayed provision of the RINs.

Western Petroleum's arguments with respect to the 25-car reduction are untenable. First, the doctrine of accord and satisfaction is not a mandatory doctrine. The decision quoted above states that accord and satisfaction "may" occur, not "will" occur. Moreover, the Astraea case, on which Western Petroleum exclusively relies, is factually distinguishable from the instant matter. In Astraea, the parties exchanged correspondence regarding what they both characterized as a "final" resolution or settlement of a dispute. Astraea, 111 F.3d at 1391. The Eighth Circuit found that the plain language of the parties' communications indicated that both objectively intended the negotiated resolution to be final and to constitute an accord and satisfaction of the disputed amounts. See id. at 1392 (noting that parties' objective intent determines whether there is accord and satisfaction) (citing Total Equip. Leasing Corp. v. LaRue Inv. Corp., 357 N.W.2d 347, 350 (Minn. Ct. App. 1984)).

Here, on the other hand, neither party characterized the 25-car reduction as a "final" resolution to all of Strategic's claims arising out of the June shipping delays. As Friesen testified, he considered the reduction a fair resolution of one of the issues caused by the shipping delays, namely that he could not sell all of the fuel Western Petroleum intended to ship to him in August, September, and October. (Friesen Dep. at 85.) It was not a resolution of his contention that he lost a customer because of the delay, however. (Id. at 86.) Absent a clear manifestation of intent that an agreement is a full resolution of all claims, whether the 25-car reduction constituted an accord and satisfaction is an issue the jury must determine.

The resolution of the delayed RINs presents a closer case, however. It appears from the parties' negotiations regarding price for the RINs that they both intended for Western Petroleum's above-market-price purchase to constitute a final resolution of the RINs issue. (See Atmore Aff. Ex. M (Docket No. 28-3) (Oct. 2, 2012, 3:49 pm e-mail from V. Friesen to P. Osterreich at Western Petroleum, proposing $.76 per RIN as a "Final and Amiable conclusion" to the parties' dispute); see also id. (Oct. 2, 2012, 3:53 pm e-mail from V. Friesen to P. Osterreich characterizing Western Petroleum's repurchase of RINs as the "best solution" to the situation).) These exchanges show that there was accord and satisfaction as to the RINs, and Western Petroleum's Motion is therefore granted as to Strategic's claim regarding the RINs.

### 4. Unjust Enrichment

Strategic does not offer any real opposition to Western Petroleum's Motion with respect to its unjust enrichment claim. "Normally, whether an express contract exists between the parties, unjust enrichment is not available as a means for recovery." Klein v. Arkoma Prod. Co., 73 F.3d 779, 785-86 (8th Cir. 1996). Because neither party disputes the existence of express contracts covering all aspects of their relationship, a claim for unjust enrichment will not lie. More fundamentally, though, Strategic does not explain in its counterclaims or its opposition to this Motion how it believes Western Petroleum was unjustly enriched in this situation. Without any explanation or opposition to the Motion as to this claim, Strategic's claim for unjust enrichment will be dismissed.

**CONCLUSION**

Genuine issues of material fact remain on most of Strategic's counterclaims. However, the claims for unjust enrichment and any claim arising out of the alleged delay in providing RINs fail as a matter of law. Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for Partial Summary Judgment (Docket No. 26) is **GRANTED in part** and **DENIED in part**.


Dated: November 25, 2013

                                          *s/ Paul A. Magnuson*
                                          Paul A. Magnuson
                                          United States District Court Judge